IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case No. 3:07 CR 497 |
| Plaintiff, | ORDER CONFIRMING RULINGS ON UNRESOLVED OBJECTIONS |
| -vs- | TO PRESENTENCE REPORT |
| Darrell M. Crosgrove, | JUDGE JACK ZOUHARY |
| Defendant. | |

This Order supplements the sentencing hearing on November 17, 2008 when the Court ruled on objections raised to the Presentence Report.  This Order confirms those rulings.

1.      The Government objects to Paragraphs 83 and 96 of the Presentence Report. Specifically, the Government argues for a Guideline increase for obstruction of justice.  This is based on Defendant's shredding of records from his law practice following the execution of a search warrant at his law office and Defendant's attempts to conceal the bank account of the Liebowitz Memorial Trust at the Monroe Bank and Trust.

§3C1.1 of the Guidelines Manual states as follows:

**Obstructing or Impeding the Administration of Justice**

If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by **2** levels.

With respect to the shredding of documents, Application Note 4(d) to that Section recognizes that the destruction of evidence "material to an official investigation or judicial proceeding" is an

example of the type of conduct to which the adjustment applies. However, here, the Government provided no evidence the papers destroyed were relevant to this investigation. Indeed, agents for the Government concede it was impossible to reconstruct the shredded documents to determine what they contained. In this case, it is just as likely that the destroyed documents were related to Defendant's interest in pornography and not to the criminal fraud charges.

With respect to the Liebowitz Memorial Trust, the Government argues Defendant was not truthful regarding the deposit history when he claimed the monies, except for the initial deposit, were from his mother. Defendant disclosed the bank account to the Court during the post-trial bond hearing. Here again, the Government offers no evidence to counter Defendant's statement that, as trustee for his mother, she would forward payments to him and he would make the deposits for her. For these reasons, the Government's objections are denied.

2.      Defendant objects to certain statements in Paragraphs 52 through 78. This objection seeks to clarify a number of statements, none of which have any bearing on the Guideline calculations. The Probation Officer has correctly styled this objection as more akin to a clarification and, therefore, the Court includes these comments by Defendant as part of the Presentence Report.

3.      Defendant objects to Paragraph 89 "because the amount of loss is excessive." Defendant believes the loss is less than $2.5 million. For reasons set forth in the Probation Officer's Response (p. 29), the Court finds the objection not well taken and is denied.

Defendant argues the loss should be measured by the amount of the rejected claims, not the amount of premiums paid. The Court disagrees. The Application Notes to § 2B1.1 of the Guidelines provides for a broad application of the term "loss" and, specifically, under Note 3(A) states "loss is the greater of the actual loss or intended loss." Note 3(A)(ii) defines intended loss as "the pecuniary

2

harm that was intended to result from the offense" and cites "insurance fraud in which the claim exceeded the insured value" as an example.  This example is the reverse of what happened in this case.  Here, the insurance premiums exceeded claims, although some claims were not paid and some were underpaid.  In either example, the amount taken is the appropriate measure.  *See United States v. Triana*, 468 F.3d 308 fn. 6 (6th Cir. 2006)  ("the Commentary to § 2B1.1 emphasizes the **amount taken** from the victim as the primary measure of loss").

In *United States v. Sanders*, 95 F.3d 449 (6th Cir. 1996), defendant and a partner started a phony insurance company which never paid out any claims.  Sanders was instrumental in setting up the company.  Sanders was convicted of wire fraud.  The district court calculated loss for the purposes of the Guidelines as the amount of premiums collected by the entire conspiracy ($729,139).  Sanders argued the relevant figure for calculating loss under the Guidelines was the amount he was ordered to pay in restitution to victims ($97,835).  The district court's loss determination was affirmed, likening the insurance policies to worthless securities: "In a fraudulent insurance scheme, such as Sanders's, the victims are not left with any collateral to sell." *Id.* at 455.

In *United States v. Simpson*, 538 F.3d 459 (6th Cir. 2008), defendant underreported the number of his employees to the Bureau of Workers' Compensation for a number of years.  The defendant was convicted of mail fraud.  The district court calculated the amount of loss as the additional premiums that insurance carriers would have charged had they received accurate payroll information ($1,584,156).  The defendant argued this was an improper means of determining loss; he maintained that because the insurance carriers received more in premiums than they paid out on claims, they had not suffered any losses. The Sixth Circuit affirmed the district court's measurement of loss, rejecting defendant's argument "that the mere provision of insurance coverage confers no

value, and that value is conferred only when a carrier actually pays on a claim.  However, this contention ignores the fact that, by agreeing to provide coverage, a carrier obligates itself to pay claims arising during the period of coverage, even if those claims exceed the premiums paid." *Id.* at 463.  The court continued, "[i]nsurance coverage, by its very nature, is forward-looking, and cannot be valued using the type of after-the-fact analysis advocated by Simpson." *Id.*

Defendant also argues that judicial finding as to the amount of the loss is inappropriate post-*Booker*.  However, many cases affirm the district court findings as to loss post-*Booker*.  Indeed, it is the Court's responsibility to make a reasonable estimate of the loss.  *See, e.g., Triana*, 468 F.3d at 321.

4.      Defendant objects to Paragraph 91 which includes a two-point enhancement for sophisticated means under Guideline § 2B1.1 and § 2S1.1. Defendant argues his conduct was "neither complex nor sophisticated."  Application Note 5(A) of that section  makes clear that an enhancement is appropriate if it involves the use of a fictitious entity, shell corporations, layering of transactions to make criminally derived funds appear legitimate or the establishment of offshore financial accounts.  As the Government notes, all of the above were involved in this case.  The evidence at trial showed that the fraud operated as a *Ponzi*-type scheme, the very type contemplated by this Guideline's two-point enhancement.  The Government correctly points out that Crosgrove bragged that this setup was a "scam;" Crosgrove created the use a fictitious attorney/claims adjuster named John Thomas; and used over one hundred John Thomas letters to conceal Crosgrove's participation in the fraud scheme (See PSR ¶¶ 67-73).

Other courts have found that creating fictitious entities satisfies the requirement for a two-point enhancement for sophisticated means under Guideline § 2S1.1 specficially.  *See United States*

4

*v. Pizano*, 421 F.3d 707 (8th Cir. 2005) (layering of transactions supported two-level enhancement); *United States v. Hammond*, 381 F.3d 316 (4th Cir. 2004) (enhancement approved where defendant employed fictitious entities and shell corporations); *United States v. Miles*, 360 F.3d 472 (5th Cir. 2004) (enhancement affirmed where one aspect of crime was hiding source of illegally derived funds).

The Sixth Circuit has interpreted "sophistication" as it relates to other crimes (non-§2S1.1 money-laundering crimes) and has approved two-level enhancements for actions similar to those at issue here. *See, e.g., United States v. Daulton*, 266 F. App'x 381 (6th Cir. 2008) (defendant's actions taken as a whole reveal a sophisticated crime in preparing fraudulent tax returns); *United States v. Kopietz*, 126 F. App'x 708 (6th Cir. 2005) ("while the information used to file at least 15 fictitious and fraudulent tax returns was not itself unduly complex or difficult to obtain, the repetitive nature of the necessary conduct along with defendants' creation of numerous fictitious identities supporting the finding."). Moreover, the Sixth Circuit routinely finds the sophistication enhancement is met when, as is the case here, the crime involves the use of fictitious names and entities. *See, e.g., United States v. McIntosh*, 52 F. App'x 678 (6th Cir. 2002) (sophistication enhancement appropriate where bank fraud defendant manufactured counterfeit checks and used fictitious names); *United States v. Lewis*, 76 F. App'x 47 (6th Cir. 2003) (sophistication enhancement appropriate where fraud defendant's crime involved faxing orders for equipment for a fictitious company, defendant used a fictitious name, faxes used a fictitious bank account, and defendant set up multiple phone lines to provide false information regarding the fictitious company's credit).

For the foregoing reasons, the Court finds a sophistication enhancement appropriate and denies Defendant's objection.

5.      The Government seeks an additional enhancement under Guidline § 3B1.1(b) arguing that Crosgrove was a manager or supervisor justifying a two or three-level enhancement.  The Government concedes that Crosgrove does "not fit neatly into a management box on a typical corporate authority flowchart but he directly supervised two individuals" (Doc. No. 100, p. 6).  The focus of the Government's argument here is the use by Crosgrove of the fictitious name John Thomas. The Court has already considered this fact in the enhancement under § 2B1.1 for sophisticated means. In addition, Crosgrove was not the organizer or leader of this conspiracy -- Haukedahl was.  Further, there were less than five participants in the conspiracy.  As the Government notes, other employees were directed to perform certain routine tasks, but these others were not part of the conspiracy.  Also, the Government points out that Haukedahl would relay instructions from Haukedahl to others -- Crosgove being a conduit for Haukedahl.  This does not make Crosgrove a manager.  The Court finds there were not five or more knowing participants, and indeed the Government acknowledges in its brief that Foreman, who was providing information to the FBI, should not be counted (Doc. No. 100, p. 8).  The Court finds that the Government has not met the requirement set forth in *United States v. Anthony*, 280 F.3d 694, 701 (6th Cir. 2002), and denies the enhancement.

IT IS SO ORDERED.

_____s/ *Jack Zouhary*_____
JACK ZOUHARY
U. S. DISTRICT JUDGE

November 26, 2008

6